DYAL *v.* COOK *et al.*

</div>

Under the pleadings and the evidence in the case, a verdict in favor of the plaintiffs was required; and it is conceded that if they were entitled to a judgment for any amount, the sum awarded is not excessive.

<div style="text-align:center">No. 4407. OCTOBER 16, 1924.</div>

Equitable petition. Before Judge Highsmith. Appling superior court. April 8, 1924.

*V. E. Padgett,* for plaintiff in error. *J. B. Moore* and *S. D. Dell,* contra.

BECK, P. J. J. E. Dyal was the owner and operator of a turpentine farm, consisting of lands owned by him, leases on other lands, and certain personal property. Upon the lands referred

to he was operating a turpentine business. On December 6, 1919, he entered into a contract with V. W. Cook and Frank Cook. This contract was reduced to writing, but was not signed by either party, and their contract finally rested in parol. But it is shown without contradiction that the unsigned written contract, which was introduced in evidence, embodied the contract finally agreed upon; and hence in referring to the contract we refer to it in the terms of the writing. By the terms of the contract Dyal sold to each of the Cooks (who are hereinafter referred to as the parties of the second part, that being the language of the written contract), a one-fourth undivided interest in the property, including the lands, the leases, and the personalty. · The entire property was valued at $32,000. At the time of the contract it was agreed and stipulated that the business should be run, and that the Cooks should give their entire time and attention to the operation of the business. It was also agreed that Dyal should pay into the assets of the firm the sum of $2000, and each of the Cooks $1000, and that the sum of $4000 so paid should be used to meet the expenses of the business during the winter and spring of 1920; and if this amount was insufficient to meet the expenses and to purchase such additional property as the parties might desire to acquire to continue the operation of the business, Dyal should furnish such sum of money, but he should be paid for the additional sum furnished out of the first profits received from the business in 1920; that the sums thus advanced were not to be considered as a part of the purchase-price of the business. It was also stipulated and agreed that the sum of $8000 to be paid by each of the parties of the second part for his one-fourth interest should be paid entirely from the profits of the business, it being stipulated that on the first day of July, 1920, there should be an accounting and settlement; and if the business had made a profit, then the entire amount of it should be "turned over to the said Dyal until he shall have received a sufficient amount of the profits in said business belonging to each of the said parties of the second part until their one half of the profits in said business shall amount to the sum of $8000.00;" but that "if on said date of July 1, 1920, there shall be an insufficient amount of profits . . to pay the said sum of $8000.00, with interest, then on December 1, 1920, the said parties shall have another settlement

and the profits of the business shall be turned over until a one-fourth interest thereof belonging to each of said parties of the second part shall be sufficient to pay the said Dyal the said sum of $8000.00, with interest, the interest to be first paid and the remainder credited on the principal, and so on, on the dates just above named in each year."

It was agreed further, that each of the parties should receive from the business the sum of $100 per month as salary, and should give their entire time and attention to the business. Stipulations were also made as to the right to sell in case either of the parties desired to sell his interest in the business; and in case it was brought to a public sale before the court-house door, after advertisement, stipulations were made as to how the several interests should be settled for. Provisions were also made for the continuation of the operation of the business throughout the current turpentine season in the event of the death of either of the parties, and for the sale of the business at the expiration of the turpentine season at public sale; it being stipulated, in case of such sale, that "each of said parties shall be entitled to a settlement of the assets of said business according to the price so brought in proportion to the interest acquired in said business at such time by each of the parties, that is, if said business should be dissolved, then each party shall be entitled to a settlement for his interest therein in proportion to the amount that each party has paid on his part of the purchase-price of such business with the value of said business fixed at the price sold for." It was also stipulated: "When the said parties of the second part shall have paid the said sums herein set forth out of the profits of said business as the purchase-price of their interest in said business, then the said party of the first part will and he is bound to make and execute unto the said parties of the second part his deed of conveyance conveying unto the said parties of the second part each a one-fourth undivided interest in said business, or the proceeds of such property, that is to say, the assets of said business, and then the said parties of the second part shall be construed to be partners in said business with the full right of a copartner, and shall be construed to have a one-fourth interest each in said business, that is to say, that it is now assumed that the said business will acquire new property, and that the property now in existence will be

consumed by said business, and when the said parties of the second part out of their share of the profits shall pay the said sum of money, then they will be the owners of such one-fourth undivided interest in said business, and until said sum of money shall have been paid in full they shall be interested in said business in proportion to the sum of money so actually paid in said business from the profits arising from the operation of said business as herein set out."

Before the date of the first settlement fixed in the contract, Dyal sold the turpentine business for the sum of $49,500; and the Cooks claimed that this gave them a profit from said business of $17,500, after making certain deductions to pay debts, etc. Dyal refused to pay the amount of their claim, and the Cooks filed their petition seeking to recover judgment for the amount they claim to be due, and for accounting. At the conclusion of the evidence the court directed a verdict for a stated amount in favor of the Cooks. To this judgment the defendant excepted.

We are of the opinion that the court properly directed a verdict for the plaintiffs in this case. There is no question as to the terms of the contract. While the written instrument embodying the contract was not signed, there is no dispute that it contains the agreement between the parties. No question is raised as to the oral contract being void under the statute of frauds. There is no dispute that Dyal, prior to the date fixed in the contract, July 1, 1920, for the first settlement between the parties and a division of the profits in case there were any, and the application of each party's share of the profits to the purchase-price of the interest in the business, sold out the business for $17,000 more than the estimated value of the business at the time the two Cooks made a purchase of a one-fourth interest each in the business. The price agreed upon for the interest of each of the two defendants in error was $8000, and this was to be paid out of the profits. Whether or not the Cooks had acquired at the beginning a full interest in the business as partners, they had an inchoate right as such in it, which would have been matured when the profits paid the purchase-price agreed on. They had given their time and attention to the business as stipulated, and had actually paid in $1000 each to defray expenses. As appears from parts of the contract stated above, the business could only be sold out

in the manner there stipulated. Dyal did not pursue the terms of the contract as to the manner and method of sale, but on his own motion sold out the entire business. And, the relations of all the parties to the subject-matter of that sale considered, the excess of the sum received by Dyal at the sale over $32,000 is to be treated as profits, that is, the excess over the agreed value of the property after deducting from such excess certain debts that had been contracted and certain expenses. This was allowed, as shown by the amount awarded to the plaintiffs, the defendants in error; that is, the sum of $1083 to V. W. Cook and $1121 to Frank Cook. It was conceded by the plaintiff in error in his motion for new trial that the amounts allowed are not in excess of that to which the plaintiffs are entitled, if they are entitled to recover any amount.

*Judgment affirmed. All the Justices concur.*